```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF RHODE ISLAND
_____
                                   )
LAUREN EKENAVIE,                   )
                                   )
            Plaintiff,             )    C.A. No. 16-535 WES
                                   )
      v.                           )
                                   )
                                   )
NANCY A. BERRYHILL, Deputy         )
Commissioner for Operations,       )
                                   )
                                   )
            Defendant.             )
_____)
```

**ORDER**

WILLIAM E. SMITH, Chief Judge.

Magistrate Judge Patricia A. Sullivan filed a Report and Recommendation ("R&R") (ECF No. 12) in this case, recommending the Court deny Plaintiff's Motion to Reverse the Decision of the Commissioner[1] ("Plaintiff's Motion") (ECF No. 10) and grant Defendant's Motion for an Order Affirming the Decision of the Commissioner ("Defendant's Motion") (ECF No. 11).

After careful review of the papers attending these motions, and of the R&R, and having heard no objections, the Court ACCEPTS the R&R and adopts its recommendations and reasoning. Plaintiff's Motion

---

[1] Formerly the Acting Commissioner of Social Security, Nancy A. Berryhill currently heads the Social Security Administration from her position of Deputy Commissioner for Operations. Nancy A. Berryhill, https://www.ssa.gov/agency/commissioner.html (last visited Apr. 2, 2018).

(ECF No. 10) is DENIED and Defendant's Motion (ECF No. 11) is GRANTED.

IT IS SO ORDERED.

/s/ William E. Smith
William E. Smith
Chief Judge
Date: April 2, 2018

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| LAUREN EKENAVIE,<br>   Plaintiff,<br><br>  v.<br><br>NANCY A. BERRYHILL, ACTING<br>COMMISSIONER OF SOCIAL SECURITY,<br>   Defendant. | :<br>:<br>:<br>:  C.A. No. 16-535WES<br>:<br>:<br>:<br>: |

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

  Before the Court is the motion of Plaintiff Lauren Ekenavie to reverse the Commissioner's decision denying Supplemental Security Income ("SSI") under § 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3) (the "Act"). Plaintiff contends that the Administrative Law Judge ("ALJ") erred in weighing the opinion evidence from her treating psychiatrist and the non-examining expert psychologists in establishing Plaintiff's mental residual functional capacity ("RFC")[1] and that the ALJ's findings regarding the credibility of Plaintiff's subjective statements are contrary to applicable law. Defendant Nancy A. Berryhill asks the Court to affirm the Commissioner's decision. The matter has been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Having reviewed the entire record, I find that the ALJ's findings are consistent with applicable law and amply supported by substantial evidence. I recommend that Plaintiff's Motion to

---

[1] Residual functional capacity is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. § 416.945(a)(1).

Reverse the Decision of the Commissioner (ECF No. 10) be DENIED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 11) be GRANTED.

## I. Background

A woman closely approaching advanced age, Plaintiff's childhood was marred by violence among her seven siblings and sexual abuse by one of her brothers. Tr. 333. After dropping out of high school before completing the eleventh grade, she had seven children and was in a relationship with a man who physically abused her and sexually abused two of the daughters. Id. Several of her children were removed by the state child protective service for reasons that are unclear. See. Tr. 305 (husband placed children in DCYF custody while Plaintiff in hospital for gall bladder); Tr. 574 (children removed by DCYF due to Plaintiff's drug use). Plaintiff's work history includes short stints at such jobs as a cashier at McDonalds and Walmart, and most recently as an assembler in a gun factory. Tr. 213. She stopped working in March 2013 after she was let go due to dropping boxes of materials that weighed more than twenty pounds. Tr. 60. While she returned to work after the alleged onset date of March 15, 2013, none of the post-onset work amounted to substantial gainful activity. Tr. 13. During the period in issue, Plaintiff was at times homeless, living in a shelter, or living with one or the other of the two daughters who are the only children with whom she has a relationship. Tr. 246, 263, 334, 363.

Before the ALJ, Plaintiff contended that there are two principal reasons why she cannot work: first, she relies on the limitations in her ability to use her hands and arms due to the impairments of carpal tunnel syndrome and cubital tunnel syndrome; second, she points to the effects of her mental health impairments, depression and anxiety with agoraphobia. Tr. 61. The ALJ accepted that all of these impairments are severe for purposes of Step Two and incorporated an array of limitations based on them into his RFC determination. Plaintiff now challenges only the ALJ's mental health RFC findings, arguing that they are not based on substantial evidence because greater

2

weight should have been afforded to the opinion of Plaintiff's treating psychiatrist, Dr. Warren Ong, than to the opinions of the non-examining expert psychologists, Drs. Clifford Gordon and Jeffrey Hughes, who wrongly relied on a mischaracterization of Plaintiff's activities of daily living. Plaintiff also asks the Court to reexamine the reasoning marshaled by the ALJ to support his conclusion that Plaintiff's subjective statements are not entirely credible; because this reasoning is contrary to the requirements of applicable law, she asks the Court to remand the matter for further evaluation.

## II.     Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999). Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); see also Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981).

The determination of substantiality is based upon an evaluation of the record as a whole. Brown, 71 F. Supp. 2d at 30; see also Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). Thus, the Court's role in reviewing the Commissioner's decision is limited. Brown, 71 F. Supp. 2d at 30. The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of

3

the Commissioner. Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)). "[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts." Id. at 31 (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)). A claimant's complaints alone cannot provide a basis for entitlement when they are not supported by medical evidence. See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21 (1st Cir. 1986); 20 C.F.R. § 416.929(a). The Court must reverse the ALJ's decision if the ALJ applies incorrect law, or if the ALJ fails to provide the Court with sufficient reasoning to determine that the law was applied properly. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145-46 (11th Cir. 1991). The Court may remand a case for a rehearing under Sentence Four of 42 U.S.C. § 405(g), under Sentence Six of 42 U.S.C. § 405(g) or under both. Jackson v. Chater, 99 F.3d 1086, 1097-98 (11th Cir. 1996).

### III.     **Disability Determination**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 416.905. The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 416.905-911.

#### A.     **The Five-Step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. § 416.920. First, if a claimant is working at a substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(b). Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work

4

activities, then the claimant does not have a severe impairment and is not disabled. 20 C.F.R. §§ 416.920(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled. 20 C.F.R. § 416.920(d). Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled. 20 C.F.R. § 416.920(e)-(f). Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted. 20 C.F.R. § 416.920(g). Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five step process applies to SSI claims).

### B.     Treating Physicians and Other Sources

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there are good reasons to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 416.927(c). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. Konuch v. Astrue, No. 11-193L, 2012 WL 5032667, at *4-5 (D.R.I. Sept. 13, 2012); 20 C.F.R. § 416.927(c)(2). The ALJ's decision must articulate the weight given, providing "good reasons" for the determination. See Sargent v. Astrue, No. CA 11–220 ML, 2012 WL 5413132, at *7-8, 11-12 (D.R.I. Sept. 20, 2012) (where ALJ failed to point to evidence to support weight accorded treating source opinion, court will not speculate and try to glean from the record; remand so that ALJ can explicitly set forth findings).

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 416.927(c). A treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 416.927(c)(2). If a treating source is not accorded controlling weight, the ALJ must apply the factors listed in 20 C.F.R. § 416.9279(c). As SSR 96-2p provides:

> The notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188 (July 2, 1996). The regulations confirm that, "[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." 20 C.F.R. § 416.927(c)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 416.927(d). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity, see 20 C.F.R. § 416.945-46, or the application of vocational factors because that ultimate determination is the

6

province of the Commissioner. 20 C.F.R. § 416.927(d); see also Dudley v. Sec'y of Health & Human Servs., 816 F.2d 792, 794 (1st Cir. 1987) (per curiam).

### C. Evaluation of Subjective Symptoms

When an ALJ decides not to credit a claimant's statements regarding the intensity, persistence and limiting effects of symptoms, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. See Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986); Rohrberg v. Apfel, 26 F. Supp. 2d 303, 309-10 (1st Cir. 1998). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence. See Frustaglia, 829 F.2d at 195. The lack of a sufficiently explicit credibility finding becomes grounds for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence so that the credibility determination is determinative, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

Guidance in evaluating the claimant's statements regarding the intensity, persistence, and limiting effects of subjective symptoms is provided by the applicable regulation, 20 C.F.R. § 416.929, and by the Commissioner's 1996 ruling, SSR 96-7p, 1996 WL 374186 (S.S.A. July 2, 1996).[2] SSR 96-7p requires that, in considering the intensity, persistence, and limiting effects of an individual's symptoms, the ALJ must consider the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects

---

[2] Since the ALJ's decision in this case, SSR 96-7p was superseded by SSR 16-3p, which became applicable to determinations or decisions made on or after March 28, 2016. SSR 16-3p, 2017 WL 5180304 (S.S.A. Oct. 25, 2017).

of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record. 1996 WL 374186, at *2. The ALJ must also consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record. Id. In evaluating whether the medical signs and laboratory findings show medical impairments that reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis set out in Avery, 797 F.2d at 29; Gullon v. Astrue, No. 11-cv-099ML, 2011 WL 6748498, at *5-6 (D.R.I. Nov. 30, 2011). However, an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

## IV.   Analysis

### A.   Opinions

According to the record, Plaintiff received little or no mental health treatment until shortly before she filed her disability application.[3] In June 2013, she initiated treatment at Crossroads with primary care physician Dr. Ivan Wolfson and therapist Ms. Maxine Goldin, a licensed social worker. In August 2013, she had her first appointment with a Crossroads psychiatrist, Dr. Ong. Plaintiff's appeal rests principally on the opinion of Dr. Ong, whom she saw twice in 2013, three times in 2014 and once in 2015, a total of six times over the relevant period. Dr. Ong's opinion was signed on February 3, 2015. Tr. 551. It concludes that Plaintiff suffers from post-traumatic stress disorder ("PTSD") and depression with a guarded prognosis due to the severe and chronic nature of her condition. Id. Dr. Ong opined to severe ("[u]nable to meet competitive standards" or "[n]o useful ability to function") limitations in nearly every functional sphere related to the mental ability to

---

[3] Plaintiff told Dr. Ungar that she had never received in-patient psychiatric treatment and that her only psychiatric services were those received at Crossroads beginning in June 2013. Tr. 333. By contrast, at intake at Crossroads, she told Dr. Wolfson that she had been hospitalized ten years prior in connection with a suicide attempt. Tr. 326.

perform unskilled work, including interacting with the public and using public transportation. Tr. 553-54. The ALJ afforded Dr. Ong's opinion "little weight" because he found it to be inconsistent with and not supported by the medical record, as well as with Plaintiff's activities as described in the record. Tr. 19.

The ALJ's explanation of the "good reasons" for the weight given to the Ong opinion is detailed and well-rooted in the record; they include Plaintiff's daily activities, ability to care for her grandchildren, the findings in the report of the consultative examining psychologist (Dr. William Ungar), the mental health treating notes and the absence of emergency room visits or in-patient hospitalizations based on mental issues. Id. In focusing on Plaintiff's activities of daily living, including babysitting for grandchildren, the ALJ noted that there are inconsistencies in the record regarding what Plaintiff could really do; he resolved these by finding that some of Plaintiff's statements were not fully credible. Further, the ALJ did not simply rely on his lay interpretation of the significance of Plaintiff's activities; to the contrary, his RFC findings rest on the opinions of the expert psychologists (Drs. Gordon and Hughes) who specified the activities that buttressed their findings of no more than moderate mental health limitations.

Plaintiff contends that the ALJ erred in finding inconsistencies between the Ong opinion and the Ungar consultative examination report, as well as the treating notes of Dr. Wolfson, Ms. Goldin and Dr. Ong himself. She also argues that the ALJ's reliance on her activities is erroneous because Drs. Gordon and Hughes placed inordinate emphasis on what she claims is an inaccurate interpretation of them. For example, she argues that the finding that Plaintiff "cooks, cleans, read[s], babysits, she does sudoku," Tr. 105, omits that Plaintiff sometimes lived with her daughters who handled the household chores, that she actually said that "most of the day she stays in bed, reading, tv or sudoku," and that caring for her grandchildren caused increased anxiety, while cooking and cleaning for them was difficult. Tr. 240, 259, 384, 463. Similarly, she contends it was error to consider her ability to take public transportation, in light of the increase in anxiety she experiences on

9

a crowded bus so that, at times, she has had to stop the bus to get off. Tr. 477. Because of these "mischaracterizations" of her daily activities by Drs. Gordon and Hughes, she argues that it was error for the ALJ to rely on them as a reason for discounting the weight to be afforded to the Ong opinion.

It is well settled that an ALJ may discount the weight given to a treating physician's assessment when the opinion is inconsistent with other evidence in the record, including treatment notes and evaluations by examining and non-examining doctors. Vieira v. Berryhill, C.A. No. 1:16-CV-00469, 2017 WL 3671171, at *3 (D.R.I. Aug. 25, 2017) (quoting Arruda v. Barnhart, 314 F. Supp. 2d 52, 72 (D. Mass. 2004)). Put differently, when the treating physician's opinion is inconsistent with other evidence in the record, the resulting conflict is to be resolved by the Commissioner and not the courts. Snow v. Barnhart, Civil Action No. 05-11878-RGS, 2006 WL 3437400, at *7 (D. Mass. Nov. 29, 2006) (citing Rodriguez, 647 F.2d at 222).

As the ALJ found, this record is replete with such inconsistences, starting with Dr. Ong's own treating notes, which reflect, for example, at the August 2013 appointment, that eye contact was appropriate, that she was not responding to internal stimuli, that speech was normal, that thought was coherent and organized, that affect was appropriate and that insight and judgment were good, with no loose associations or flights of ideas, delusions, current suicidal ideation or psychotic perceptual disturbances. Tr. 405. By Plaintiff's last encounter in the record with Dr. Ong, his examination yielded findings that depression was "stable" and stress was reduced, as well as that she was "well engaged" with normal speech and thoughts, good mood, and no delusions, hallucinations or homicidal or suicidal ideation. Tr. 577. These notes contrast markedly with Dr. Ong's opinion, signed only two months earlier, which find, for example, "Poverty of content of speech," "Mood disturbance," "Difficulty thinking or concentrating," and "Persistent disturbances of mood or affect." Tr. 552.

Also at odds with the Ong opinion are Dr. Wolfson's treating notes. Dr. Wolfson, who saw Plaintiff far more frequently than Dr. Ong, performed a psychiatric examination at nearly every

appointment; these overwhelmingly reflect that Plaintiff's appearance and affect were normal and that her mood was euthymic. Tr. 310, 350, 459, 493, 517, 525, 534, 566, 585. Less frequently, Dr. Wolfson recorded negative observations, such as dysthymic mood and abnormal affect. Tr. 325, 368, 376, 414, 473. Other treating providers made similar benign observations. See, e.g., Tr. 363 (therapist notes, "[n]o recent depression"); Tr. 388 (emergency room staff observe behavior and mood cooperative, affect calm, oriented); Tr. 482 (treating gynecologist observes normal appearance and affect, euthymic mood and no impairment of thought content). Dr. Ong's opinion also clashes with the findings of Dr. Ungar, the consultative expert psychologist. For example, based on testing and clinical observation, Dr. Unger concluded that a thought disorder was not observed, that concentration, attention, and task performance were adequate and that short- and long-term memory functions were intact, Tr. 335, while Dr. Ong's opinion indicates that she had difficulty thinking and concentrating, as well as short- and long-term memory impairments. Tr. 552. In short, I find that the ALJ did not err in determining that Dr. Ong's opinion was inconsistent with and not supported by the medical record and in discounting it for that reason.

  The ALJ's other "good reason" for discounting the Ong opinion – its inconsistency with Plaintiff's activities – is equally well supported by substantial evidence. Plaintiff is right that the evidence pertaining to her activities is mixed. For example, in her Function Report, Plaintiff wrote that she does not cook or do household chores because her daughter does all the work. Tr. 241. Yet, she told Ms. Goldin that she was doing housework for a sister who broke her hip, Tr. 317-18, as well as that she cleans the house and cares for the grandchildren, although she sometimes finds babysitting overwhelming. Tr. 356, 479; see also Tr. 248-49 (submission by Plaintiff's friend states that she can prepare simple (microwave) meals, do some sweeping, mopping and cleaning dishes, care for grandchildren and shop for food). Consistently, Dr. Ungar's report specifies that Plaintiff "maintains her own meals and laundry chores . . . [and] may also go out walking." Tr. 334. Similarly, the record contains repeated references to Plaintiff's ability to ride the bus, e.g. Tr. 241,

11

332, as well as to occasional panic attacks on a crowded bus that cause her to get off. Tr. 243. Ms. Goldin's notes occasionally reflect her conclusion that Plaintiff's ability to perform activities of daily living appeared normal, Tr. 345, 373, 429, although the Crossroads records frequently include Plaintiff's subjective report of extreme difficulty with activities of daily living due to the symptoms of depression. E.g., Tr. 303, 413.

Plaintiff's attack on this "good reason" for discounting the Ong opinion founders on the detailed analysis in the decision, which makes plain that the ALJ carefully considered (and specifically referenced) all of this conflicting evidence. Tr. 14-18. At bottom, the resolution of such discrepancies is the province of the ALJ, not this Court. Greene v. Astrue, Civil Action No. 11-30084-KPN, 2012 WL 1248977, at *3 (D. Mass. Apr. 12, 2012) ("Plaintiff must show not only the existence of evidence in the record *supporting* her position but must also demonstrate that the evidence relied on by the ALJ is either insufficient, incorrect, or both.") (emphasis in original); see Ortiz v. Berryhill, C.A. No. 16-584JJM, 2017 WL 6001698, at *12 (D.R.I. Nov. 9, 2017), adopted, 2017 WL 5992276 (D.R.I. Dec. 1, 2017) (court may not re-weigh the evidence). I do not recommend that the Court try to second-guess the ALJ's conclusion; the inconsistency between the Ong opinion and Plaintiff's activities as assessed by the ALJ amounts to substantial evidence for the determination to afford the opinion little weight.

The corollary to Plaintiff's arguments seeking to shore up the Ong opinion is her contention that the ALJ erred in affording "great weight" to the opinions of Drs. Gordon and Hughes, the non-examining expert psychologists.[4] Again her focus is on activities of daily living, this time criticizing

---

[4] There is one exception to the "great weight" afforded to the opinions of these psychologists, which is not relevant to what Plaintiff has put in issue. The ALJ disagreed with their RFC finding of no social limitations, although he adopted their finding of moderate social impairment at Step Two. Crediting Plaintiff's statements that she had serious difficulties in crowds and no friends, coupled with the diagnosis of agoraphobia, the ALJ included social limitations in the RFC that formed the basis for his decision. Because Plaintiff has not challenged this determination, it will not be discussed further. See Shinseki v. Sanders, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").

the psychologists' explanation, for example, that her ability to cook, clean, read, do Sudoku and babysit supports the conclusion that she "can thus overall attend to basic tasks which are simple, routine, repetitive in nature." Tr. 91, 105.  Plaintiff contends that these opinions should be discounted based on the countervailing record evidence that, at other times (for example, when living with her daughter), she did not cook or clean, that babysitting made her anxious, and that she was in bed when doing Sudoku.  Importantly, she does not argue that the psychologists were simply wrong – that is, she concedes that the record reflects that she was able to and did perform each of the activities mentioned as an additional explanation for the psychologists' functional opinions.

This attack on the non-examining psychologists' opinions is unavailing.  Using their medical expertise as psychologists, Drs. Gordon and Hughes reviewed the entirety of the record then available, including, for example, the many varying references to Plaintiff's ability to cook and clean, and considered these references in forming their professional opinions regarding Plaintiff's ability to perform various functions pertinent to the ability to work.  See Ortiz, 2017 WL 6001698, at *11 (narrative explanations by expert psychologist that refer to activities such as going to church as pertinent to capacity to function appropriately relied on by ALJ).  By explaining their opinions with capsule references to activities that the record makes plain Plaintiff was able, at times, to perform, these expert psychologists were deploying their training and expertise to make such judgments.  The ALJ was well justified in relying on these expert conclusions.  Viveiros v. Astrue, CA No. 06-419T, 2009 WL 196217, at *8 (D.R.I. Jan. 23, 2009) ("the ALJ was entitled to rely upon the opinion of the DDS reviewing physician") (citing Berrios Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 431 (1st Cir. 1991)).

Based on the foregoing, I find that the ALJ's assessment of the Ong, Hughes and Gordon opinions is well anchored in the substantial evidence.  Finding no error, I do not recommend remand on this basis.

B.      **Subjective Statements**

Plaintiff's challenge to the ALJ's credibility determination rests on what she contends is the ALJ's failure properly to consider all of the factors listed in the First Circuit's Avery decision and in the applicable regulation, 20 C.F.R. § 416.929(c)(3).[5] Citing Bazile v. Apfel, 113 F. Supp. 2d 181, 188 (D. Mass. 2000), and Torres v. Barnhart, 235 F. Supp. 2d 33, 43 (D. Mass. 2002), she contends that the ALJ made only a passing reference to Avery and failed to account for the nature, location, onset, duration, frequency, radiation and intensity of the pain; failed to account for medication type, dosage and side effects; failed to account for precipitating and aggravating factors; and failed to account for functional restrictions. She also returns to her critique of the ALJ's treatment of her activities, arguing that he improperly conflated the ability to perform specified activities with the ability to work. Neither of these arguments is well founded.

The ALJ's decision correctly begins the analysis with an articulation of the two-part standard for evaluating a claimant's subjective complaints, followed by a detailed explication of Plaintiff's statements regarding her symptoms, daily activities, the location, duration and intensity of the pain, and the functional restrictions it causes, juxtaposed against the objective medical evidence bearing on the same factors, with particular focus on the report of the consultative examiner, Dr. Paul

---

[5] The Avery factors are:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain; (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions); (3) Type, dosage, effectiveness, and adverse side effects of any pain medication; (4) Treatment, other than medication, for pain relief; (5) Functional restrictions; and (6) The claimant's daily activities.

797 F.2d at 29. As listed in the regulation, the factors are essentially the same:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain and symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms . . .; and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3).

14

Dionisopoulos, and the testifying medical expert, Dr. James Haynes. Tr. 16-20. By way of a single example, the ALJ relied on the inconsistency between Plaintiff's statements and Dr. Dionisopoulos' test results pertaining to her wrists, arms and hands, which showed that "no atrophy or pain could be appreciated on palpation of the bilateral hands," "[s]he had free range of motion of the upper and lower extremities without difficulty," Tr. 331, and "negative Tinel's sign of bilateral hands, hand grasp was 5/5 and symmetric bilaterally and no neurological impairment could be appreciated." Tr. 17 (citing Tr. 331). The same inconsistency – between Plaintiff's subjective statements regarding wrist pain and objective testing results – is mirrored in the treating notes from Rhode Island Hospital, which repeatedly conclude that her wrist impairment is mild. Tr. 393-94 (November 2013: subjective history somewhat consistent with carpal tunnel syndrome but examination results are not); Tr. 442-43 (November 2013: examination results not consistent with subjective complaints suggesting carpal tunnel syndrome); Tr. 559-61 (January 2015: subjective complaints inconsistent with EMG showing only mild carpal tunnel syndrome; no need for surgery). The only Avery factor not specifically discussed is Plaintiff's minimal use of pain medication; as the record reflects, for much of the relevant period, she was prescribed only antidepressants, Tr. 330, 493, 551, while, during the hearing, she told the ALJ that the only pain medication she ever took was Ibuprofen and, briefly, Naproxen. Tr. 61-62. This omission is not error. It is well settled that an ALJ is not required to "make specific findings regarding each of the [Avery] factors in his written decision." Shields v. Astrue, Civil Action No. 10-10234-JGD, 2011 WL 1233105, *11 (D. Mass. Mar. 30, 2011).

Nor did the ALJ commit the error of equating Plaintiff's activities with the ability to perform certain work. Teixeira v. Astrue, 755 F. Supp. 2d 340, 347 (D. Mass. 2010). Rather, it is plain that he considered them as supportive of the negative credibility finding, leaving the analysis of their impact on function to the non-examining experts. Id.

15

There is no need to go further. Based on the foregoing, I find that the ALJ's credibility determination is appropriately based on consideration of record evidence bearing on the pertinent factors. I do not find any error in the ALJ's assessment of Plaintiff's subjective statements and recommend that the Court affirm the credibility determination. See Frustaglia, 829 F.2d at 195 (court should not disturb a clearly-articulated credibility finding with substantial supporting evidence).

## V.     Conclusion

Based on the foregoing analysis, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 10) be DENIED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 11) be GRANTED. Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
February 22, 2018